UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, PACIFIC ENVIRONMENT, and TURTLE ISLAND RESTORATION NETWORK,<br><br>Plaintiffs,<br><br>vs.<br><br>EXPORT-IMPORT BANK OF THE UNITED STATES and FRED P. HOCHBERG, in his official capacity as Chairman and President of the Export-Import Bank of the United States,<br><br>Defendants. | Case No: C 12-6325 SBA<br><br>**ORDER DENYING MOTION TO TRANSFER**<br><br>Docket 15 |

Plaintiffs Center for Biological Diversity ("CBD"), Pacific Environment, and Turtle Island Restoration Network ("Turtle Island") (collectively, "Plaintiffs") bring the instant environmental action against the Export-Import Bank of the United States ("Ex-Im Bank") and Fred P. Hochberg ("Hochberg"), in his official capacity as Chairman and President of Ex-Im Bank (collectively, "Defendants"). Plaintiffs allege that Ex-Im Bank provided financing for a natural gas project in Australia without complying with environmental laws in violation of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470, et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

The parties are presently before the Court on Defendants' motion to transfer venue to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a). Dkt. 15. Plaintiffs oppose the motion. Dkt. 20. Having read and considered the

papers filed in connection with this matter and being fully informed, the Court hereby DENIES Defendants' motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. The Parties

Ex-Im Bank is an independent federal agency tasked with providing loans, guarantees, insurance, and credits to aid in financing and to facilitate the exports of goods and services, imports, and the exchange of commodities and services between the United States and any foreign country or the agencies or nationals of any such country. Compl. ¶¶ 1, 44, Dkt. 1; see 12 U.S.C. § 635(a)(1). Ex-Im Bank is headquartered in Washington, D.C., and is the official export credit agency of the United States. See 12 U.S.C. § 635(a)(1). Ex-Im Bank's "objective in authorizing loans, guarantees, insurance, and credits [is] to contribute to maintaining or increasing employment of United States workers." Id.

The CBD is incorporated in California and its main office is located in San Francisco, California. Compl. ¶ 12. Through science, policy, and environmental law, the CBD advocates for the protection of threatened, endangered, and rare species and their habitats throughout the United States and abroad. Id. The CBD has programs that focus specifically on ocean protection and combating climate change.[1] Id. The CBD has more than 39,000 active members and 474,000 online activists. Id. ¶ 13. Its members reside

---

[1] According to the CBD, the funding for the instant action falls within its Oceans Program and its International Program, which are both based in Northern California. Galvin Decl. ¶ 8. Of the four positions in the CBD's Oceans Program, three are based in San Francisco, including the Program's Director. Id. The CBD's San Francisco office serves as the "hub" for almost all of the Oceans Program activities, with most Freedom of Information Act requests, court filings, and comment submittals handled out of this office. Id.

throughout the United States and in many other countries, including Australia.[2] Id. Almost 3,000 of the CBD's members reside in the Northern District of California. Galvin Decl. ¶ 3. According to Plaintiffs, the CBD has members and staff that reside in the United States and have specific plans to visit Australia's Great Barrier Reef World Heritage Area generally and the Gladstone area specifically to recreate and to view wildlife. Compl. ¶ 15.

Pacific Environment is a non-profit environmental organization based in San Francisco, California. Compl. ¶ 16. Pacific Environment's mission is to protect the living environment of the Pacific Rim. Id. Pacific Environment is dedicated to promoting international efforts to protect biodiversity and to protect rare and endangered species. Id. As part of Pacific Environment's broader mission to protect the Pacific Rim, it seeks to hold public finance institutions, including Ex-Im Bank, accountable to local communities and the environment through project monitoring to ensure that public money is used to support best environmental protection practices. Id. Pacific Environment has staff and members that live in the United States who have visited the Gladstone area of Australia. Id. ¶ 17

Turtle Island is a non-profit corporation with its principal place of business in Marin County, California. Compl. ¶ 18. Turtle Island operates the Sea Turtle Restoration Project, which is dedicated to the protection and restoration of endangered and threatened species of sea turtles. Id. Turtle Island has over 6,300 members, including members in California[3] and Australia, and more than 70,000 online activists and supporters who follow and take action on its campaigns. Id. Turtle Island members each share a commitment to the study, protection, enhancement, conservation, and preservation of the world's marine ecosystems and the wildlife that inhabits the oceans. Id. Turtle Island has worked extensively to conserve and protect sea turtles in the Pacific Ocean from a variety of threats, including

---

[2] Several members of the CBD live in Queensland, Australia and in the Gladstone area of Australia. Compl. ¶¶ 13-14. Some of these members work in the fishing industry in the Gladstone Harbour/Port Curtis area and rely on these waters for their income. Id. ¶ 13. The CBD also has members that regularly recreate on Gladstone Harbour and the broader Great Barrier Reef World Heritage Area. Id. ¶¶ 13-14.

[3] Turtle Island has 3,450 members in California. Shore Decl. ¶ 4, Dkt. 20-2.

efforts to conserve sea turtles and other marine wildlife in Australia. Id. Turtle Island has staff and members who regularly visit Australia, including the Great Barrier Reef World Heritage Area. Id. ¶ 19.

**B.     The Project**

On May 3, 2012, Ex-Im Bank approved a $2.95 billion direct loan to finance the development and construction of the Australia Pacific Liquefied Natural Gas ("LNG") Project ("the Project") within Australia's Great Barrier Reef World Heritage Area and the Rodds Bay Dugong Protection Area. Compl. ¶¶ 1, 20, 76, 81. The Project will be located in Queensland, Australia. Id. ¶ 69. It is a joint venture between Origin Energy, ConocoPhillips, and the China Petrochemical Corporation (Sinopec). Id.

The Project includes drilling up to 10,000 coal-seam wells in the interior Surat and Bowen Basins west of Brisbane, installing nearly 300 miles of underground pipe to transport the gas to the coast,[4] constructing a LNG facility on Curtis Island to process, store, and facilitate transport of the LNG,[5] and dredging Gladstone Harbor to enable transport tankers to access the LNG facility. Compl. ¶¶ 69-72. Once operational, tankers will transport the LNG across Port Curtis and typically through the Great Barrier Reef to destinations worldwide. Id. ¶ 72. At maximum capacity, the Project may increase shipping through the Great Barrier Reef Marine Park by 13%. Id.

According to Plaintiffs, the Project will adversely impact the environment and may impact marine wildlife through the destruction of habitats of endangered or threatened species, including the dugong, the green sea turtle, the South Pacific Ocean Distinct Population Segment of the loggerhead sea turtle, the saltwater crocodile, the humpback whale, and the sperm whale. See Compl. ¶¶ 53-66, 69-73, 75-78. Plaintiffs allege that the construction and operation of the Project will result in the emission of substantial amounts

---

[4] The underground pipeline includes a marine crossing over a channel that separates the coast and Curtis Island. Compl. ¶ 70. The marine crossing will include dredging. Id.

[5] The LNG facility will also include a marine loading jetty to transport the LNG to tankers for shipping. Compl. ¶ 71. The facility will occupy 740 acres of land and over 800 acres of seabed. Id. Construction of the facility will require dredging. Id.

- 4 -

of greenhouse gases. Id. ¶ 73. Specifically, Plaintiffs allege that the Project will emit over 11 million tons of carbon dioxide equivalents ("CO2e") per year at maximum capacity. Id.

In 2010, the Project's proponents published an Environmental Impact Statement ("EIS") to document the likely impacts from the construction and operation of the Project. Compl. ¶ 74. The EIS was submitted to Ex-Im Bank and constitutes the Project's Environmental Impact Assessment or equivalent documentation pursuant to Ex-Im Bank's Procedures and Guidelines. Id. According to Plaintiffs, the EIS was not issued by Ex-Im Bank in conformance with the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4335, and thus does not comply with the statute. Id.

### C. Plaintiffs' Claims

The complaint alleges two claims for relief: (1) violation of § 7 of the ESA; and (2) violation of the NHPA and the APA. Compl. ¶¶ 87-98. Plaintiffs' first claim for relief alleges that Defendants violated the ESA by failing to comply with the procedural mandates of § 7 of the ESA. Id. ¶¶ 92-93. Specifically, Plaintiffs allege that Ex-Im Bank failed to request from the U.S. Fish and Wildlife Service and the National Marine Fisheries Service ("the Services") a list of endangered and threatened species present in the action area, and failed to prepare a biological assessment describing the impacts of the Project on these species as required by the ESA. Id. ¶ 90. Plaintiffs further allege that Ex-Im Bank failed to initiate or complete consultation with the Services regarding the impacts of its action on ESA-listed species as required by the ESA. Id. ¶ 91.

Plaintiffs' second claim for relief alleges that Ex-Im Bank failed to generate and collect information regarding the Project's effects on the Great Barrier Reef World Heritage Area, determine whether the effects will be adverse, consider mitigation to avoid those effects, and to properly consult with all parties regarding the Project's effects. Compl. ¶ 97. Plaintiffs allege that Defendants' failure to properly take into account the Project's effects on the Great Barrier Reef World Heritage Area violates the NHPA, is arbitrary, capricious, and otherwise not in accordance with law, and/or constitutes an action unlawfully withheld under the APA. Id. ¶ 98.

## II. **LEGAL STANDARD**

Title 28 of the United States Code, section 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). The decision whether to transfer an action under § 1404(a) is committed to the sound discretion of the district court. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842-843 (9th Cir. 1986).

Section 1404(a) involves a two-step inquiry. First, the Court must determine whether the transferee court is one where the action might have been brought. Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). If so, the Court may transfer the case for the convenience of the parties and witnesses and in the interest of justice. Id. In deciding the second step, a district court may consider the following non-exhaustive list of factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-499 (9th Cir. 2000). The Court may also consider any local interest in the controversy, and the relative court congestion and the time until trial in each forum. Ward v. Fluor Enterprises, Inc., 2011 WL 778720, at *2 (N.D. Cal. 2011). "The court has the broad discretion to address some of these or other factors based on the particular facts of each case." Id. The burden is on the moving party to demonstrate that the action should be transferred. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

# III. DISCUSSION

## A. Where the Action Might Have Been Brought

"In determining whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district." Hatch, 758 F.2d at 414. A civil action in which a defendant is an officer or employee of the United States or any agency thereof may be brought in any judicial district in which (1) "a defendant in the action resides," (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).

It is undisputed that the instant action could have been commenced in the District of Colombia. Ex-Im Bank is a federal agency headquartered in the District of Colombia and Hochberg is sued in his official capacity as Chairman and President of Ex-Im Bank. See Williams v. United States, 2001 WL 1352885, at *1 (N.D. Cal. 2001) ("For purposes of venue, all federal defendants reside in Washington, D.C."). Further, a substantial part of the events and omissions giving rise to this action occurred in the District of Colombia. Plaintiffs commenced the instant action to challenge the Defendants' approval of a $2.95 billion direct loan to finance the development and construction of the Project. All of the agency staff that worked on the loan are based in Washington D.C., and the Ex-Im Board of Directors meeting at which the loan was approved was held in Washington D.C. Parsons Decl. ¶ 4. In addition, apart from site visits to inspect the Project in Australia, the entire environmental review process for the Project occurred in Washington D.C., and members of the transaction team held meetings about the Project in Washington D.C, Australia, and China. Id. ¶ 5. Accordingly, because the instant action could have been brought in the District of Colombia, the remaining issue is whether a transfer of this action to the District of Colombia is appropriate based on the convenience of the parties and witnesses and the interest of justice. These factors are discussed below.

///

**B.     Factors Concerning Convenience and the Interests of Justice**

In this environmental case, several of the factors in the transfer analysis are neutral. The convenience of witnesses and ease of access to sources of proof factors are neutral because it is undisputed that this is an administrative record case, and because the relevant documentary evidence is easily transported to this district.[6] In addition, the Northern District of California and the District of Columbia are equally familiar with the environmental laws at issue in this case. See Cary v. Hall, 2006 WL 6198319, at *2 (N.D. Cal. 2006) ("The law recognizes no doctrine of specialization amongst federal districts, but considers every federal court competent to consider challenges under the Endangered Species Act.").

**1.     Plaintiffs' Choice of Forum**

Generally, a plaintiff's choice of forum is afforded substantial deference when the district court is considering a motion to transfer under § 1404. See Decker Coal, 805 F.2d at 843 ("defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum"); see Creative Tech., Ltd. v. Aztech Sys., 61 F.3d 696, 703 (9th Cir. 1995) ("there is normally a strong presumption in favor of honoring the plaintiff's choice of forum"); Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985) ("unless the balance of factors is strongly in favor of the defendants, the

---

[6] The parties agree that the merits of this case should be decided based on the administrative record. However, Defendants suggest that extra-record evidence may be necessary, including testimony from agency staff members located in Washington D.C. In the absence of a showing that extra-record evidence is necessary to resolve the instant action, the Court considers this case to be one that is based solely on the administrative record. In the event that witnesses or proof located in the District of Columbia become necessary to these proceedings, Defendants can file another § 1404 motion to transfer. See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2013 ed.) § 4:667 (while a transfer for "convenience" should be brought as soon as the "inconvenience" becomes apparent, "the motion technically can be made at any time."). To the extent Plaintiffs contend that the convenience of witnesses factor weighs against transfer because there are witnesses located in this district that may have to testify to establish Article III standing, the Court disagrees. Plaintiffs have failed to explain why witness testimony would be necessary to establish standing. Plaintiffs have not argued, let alone shown, that affidavits would be insufficient to establish standing. In fact, Plaintiffs concede that they "typically demonstrate standing by submitting standing declarations from individual, organizational members." Pls.' Opp. at 7.

plaintiff's choice of forum should rarely be disturbed"). "This is especially true when a plaintiff chooses to sue in its 'home turf.' " Natural Wellness Centers of America, Inc. v. J.R. Andorin Inc., 2012 WL 216578, at *10 (N.D. Cal. 2012); see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). However, the deference accorded to a plaintiff's chosen forum should be balanced against the extent of both the defendant's and plaintiff's contacts with the chosen forum, including those relating to plaintiff's claims. Pac. Car & Foundry v. Pence, 403 F.2d 949, 954 (9th Cir. 1968). "If the operative facts have not occurred within the forum of original selection *and* that forum has no particular interest in the parties or the subject matter, [a] plaintiff's choice is only entitled to minimal consideration." Id. (emphasis added).

Defendants contend that Plaintiff's choice of forum is entitled to minimal deference because the operative facts giving rise to this action occurred in Washington D.C., and because this District has no particular interest in or connection to this litigation. Defs.' Mtn. at 4-5. While Plaintiffs do not contend that the operative facts giving rise to the instant action occurred within the Northern District of California, and have not identified a particularized local impact that would result from the Defendants' alleged unlawful conduct,[7] they contend that Defendants have failed to show that the Northern District of California has no particular interest in the parties or the subject matter of this litigation. The Court agrees.

Plaintiffs are all incorporated in California, have offices in this district, have members that live in this district who are concerned about the challenged decision, developed this case, in part, while in this district, and made the decision to file the case while in this district. See Norlen Decl. ¶¶ 4-5, 7-9, Dkt. 20-1; Shore Decl. ¶¶ 3-5; Galvin Decl. ¶¶ 3, 5-8, 12, 14. The CBD directs its climate and ocean protection efforts from

---

[7] In fact, Plaintiffs admit that the environmental impacts will occur "almost exclusively in Queensland, Australia." Pls'. Opp. at 9. According to Plaintiffs, "[o]utside of the project's climate change impacts, the . . . project will not affect the lands or waters of the United States. However, the project will affect three U.S. Endangered Species Act-listed species, including the dugong and distinct population segments of green and loggerhead sea turtles." Galvin Decl. ¶ 11.

offices in this district. Galvin Decl. ¶¶ 7-8. Likewise, Pacific Environment and Turtle Island direct their respective environmental protection efforts from offices in this district. See Norlen Decl. ¶¶ 5, 8; Shore Decl. ¶ 3. Further, Plaintiffs assert that Northern California-based members of their organizations have specific plans to travel to Australia to view the affected environment and wildlife, and are concerned that the Project will harm their recreational and aesthetic interests. See Norlen Decl. ¶ 10; Shore Decl. ¶ 6; Galvin Decl. ¶ 14. Thus, this case is not one in which the forum has no particular interest in the parties or subject matter of the action. The Northern District of California has a particular interest in this action because Plaintiffs are residents of California and each has an office in this district as well as members that reside in this district who are concerned about the potential impacts from the Project, including impacts on endangered and threatened species and the climate. Accordingly, this factor weighs against transfer. See Center for Biological Diversity v. Lubchenco, 2009 WL 4545169, at *4 (N.D. Cal. 2009) (finding that plaintiffs' choice of forum is entitled to deference because California has an interest in litigation involving one of its residents); Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc., 2006 WL 2868971, at *3 (N.D. Cal. 2006) (noting that California has an interest in litigation concerning its residents).

### 2. Convenience of the Parties

Defendants are both located in Washington D.C. and do not have any apparent connection to the Northern District of California beyond the fact that Ex-Im Bank has previously litigated a case similar to the instant action in this district. See Friends of Earth, Inc. v. Mosbacher, 488 F.Supp.2d 889 (N.D. Cal. 2007). As discussed above, Plaintiffs are all incorporated in California and have offices in this district. Galvin Decl. ¶ 5; Shore Decl. ¶ 3; Norlen Decl. ¶ 4. Defendants do not dispute that Turtle Island and Pacific Environment reside in the Northern District of California. Defs.' Mtn. at 5-6. Nor do they

**1** dispute that Plaintiffs are incorporated in California, and that the CBD has an office in San
**2** Francisco, California.[8]

**3** Defendants contend that Washington D.C. is "evidently" not an inconvenient forum
**4** for the CBD because it litigates regularly in the District of Colombia. Defs'. Mtn. at 6.
**5** Plaintiffs do not dispute that the CBD has previously litigated in the District of Colombia.
**6** However, Plaintiffs argue that this factor weighs against transfer because they all "operate
**7** in northern California and maintain large offices here," and because "key staff people
**8** assisting with and making decisions regarding this case" would be unable to attend hearings
**9** if the case is transferred to Washington D.C. Pls'. Opp. at 7-8.

**10** The Court finds that this factor is neutral. While it is clear that the respective parties
**11** will face increased litigation expenses and inconvenience if the case proceeds in their non-
**12** preferred forum, transfer is not appropriate if it simply shifts the inconvenience from one
**13** party to another. Decker Coal, 805 F.2d at 843; see also STX, Inc. v.. Trik Stik, Inc., 708
**14** F.Supp. 1551, 1556 (N.D. Cal. 1988) ("If the gain to convenience to one party is offset by
**15** the added inconvenience to the other, the courts have denied transfer of the action."). There
**16** is nothing before the Court demonstrating that Plaintiffs will be more inconvenienced by a
**17** transfer of this action then Defendants will be if the action is not transferred. Contrary to
**18** Plaintiffs' contention, the fact that "key staff" members will be unable to attend hearings if
**19** this case is transferred does not demonstrate that this factor weighs against transfer. As
**20** pointed out by Defendants, if this case is not transferred, Ex-Im Bank staff members will be
**21** unable to attend hearings. Defs.' Reply at 5.

**22** Finally, to the extent Plaintiffs argue that this factor weighs against transfer because
**23** litigating this action in the District of Colombia will be inconvenient for their counsel, the
**24** Court disagrees. The location of counsel is not an appropriate factor for the Court to
**25** consider when deciding a motion to transfer under § 1404(a). Clark v. Sprint Spectrum

---

[8] Defendants dispute whether the CBD's "main office" is located in this district. Id. at 6 n. 2. However, because the resolution of the instant motion does not require the Court to determine whether the CBD's "main office" is located in this district, the Court will not reach this issue.

L.P., 2010 WL 5173872, at *3 (N.D. Cal. 2010); <u>Bibo v. Federal Express, Inc.</u>, 2007 WL 2972948, at *3 (N.D. Cal. 2007); <u>see</u> also <u>In re Horseshoe Ent.</u>, 305 F.3d 354, 358 (5th Cir. 2002) (the factor of "location of counsel" is irrelevant and improper for consideration in determining the question of transfer of venue).

### 3. Relative Court Congestion

The relative docket congestion of the competing forums is also relevant to the Court's decision on whether to transfer an action. <u>See</u> <u>Decker Coal</u>, 805 F.2d at 843. This factor examines "whether a trial may be speedier in another court because of its less crowded docket." <u>Gates Learjet Corp. v. Jensen</u>, 743 F.2d 1325, 1337 (9th Cir. 1984). "To measure congestion, courts compare the two fora's 'median time from filing to disposition or trial.' " <u>Shore to Shore Properties, LLC v. Allied World Assur.</u>, 2011 WL 4344177, at *6 (N.D. Cal. 2011) (quoting <u>Costco Wholesale Corp. v. Liberty Mutual Ins. Co.</u>, 472 F.Supp.2d 1196 (S.D. Cal. 2007)).

Defendants contend that the relative Court congestion in each forum favors transfer. Defs.' Mtn. at 7. In support of their position, Defendants cite to "Federal Court Management Statistics (September 30, 2011)." <u>Id.</u> A review of the most recent Federal Court Management Statistics reveals that in the 12-month period ending March 31, 2013, the median time from filing to disposition in civil cases is 6.4 months in the Northern District of California and 8.9 months in the District of Columbia. <u>See</u> http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-march-2013.aspx. Further, the Northern District of California has an average of 499 pending cases per judgeship while the District of Columbia has an average of 215 pending cases per judgeship. <u>Id.</u> Finally, the median time from filing to trial in civil cases is 28.4 months in the Northern District of California and 41.5 months in the District of Columbia. <u>Id.</u>

The Court finds that this factor is neutral or weighs slightly against transfer. While this district has more pending cases per judgeship (i.e., this district is more congested), the

median time from filing to disposition and the median time from filing to trial is longer in the District of Colombia.

### 4. **Localized Interest in the Action**

The Ninth Circuit has directed courts to consider "the local interest in having localized controversies decided at home" when deciding whether a transfer of venue is appropriate. Decker Coal, 805 F.2d at 843. Defendants contend that this factor weighs in favor of transfer because the Northern District of California does not have a localized interest in this action. Defs.' Mtn. at 6. According to Defendants, Washington D.C. has a localized interest in this action because Ex-Im Bank is headquartered in Washington, D.C., the agency's administrative process occurred in Washington D.C., and the case involves issues of national and international import. Id. Plaintiffs disagree, arguing that the District of Colombia does not have a localized interest in this case because "local" refers to where the environmental impacts occur and where the people whose rights and interests are most vitally affected. Pls'. Opp. at 8-9.

The Court finds that this factor weighs slightly in favor of transfer. Plaintiffs concede that the environmental impacts will occur "almost exclusively in Queensland, Australia," and do not contend that residents of this district will suffer a unique harm as a result of the Project. Pls.' Opp. at 9. Plaintiffs have not identified a local interest in this case beyond the fact that they and some of their members are located in this district. Defendants, for their part, have not shown that the District of Colombia has a strong localized interest in this controversy. In fact, Defendants concede that "the operative facts in this case cannot be accurately characterized as local; they are overwhelmingly national and international in scope." Defs.' Mtn. at 4. According to Defendants, this case raises issues regarding the jurisdictional reach of the ESA and NHPA, and will impact businesses in the United States that will export goods to Australia for the Project. Id. at 4-5.

Given the nature and scope of this controversy, the Court finds that the District of Colombia, on balance, has a stronger localized interest in this controversy than the Northern District of California. This district's generalized interest in the impacts from the

Project is outweighed by the District of Colombia's interest in the case, as the District of Colombia is where the Defendants reside and where the administrative process giving rise to the challenged decision occurred. See Alec L. v. Jackson, 2011 WL 8583134, at *5 (N.D. Cal. 2011) (finding that the District of Colombia "likely" had a greater interest in a case challenging the federal government's actions in contributing to global warming because California has only a general interest in the effects of global warming while the District of Columbia is where the relevant policies were made, where the policymakers are located, and where the named Defendants reside).

### 5. Interests of Justice

"In determining whether to transfer a case . . . the district court must determine whether the 'interests of justice' dictate such a transfer." Sherar v. Harless, 561 F.2d 791, 794 (9th Cir. 1977). The interests of justice refer to "those public-interest factors of systemic integrity and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988) These interests include "whether efficient and expeditious administration of justice would be furthered." Sherar, 561 F.2d at 794. Defendants argue that the interests of justice counsel in favor of transfer because this case involves a federal agency headquartered in Washington D.C. and questions of national and international interest and policy. Defs'. Mtn. at 7. The Court finds that Defendants have failed to sustain their burden to show that this factor weighs in favor of transfer. Defendants have not argued, let alone demonstrated, that transfer would further the efficient and expeditious administration of justice. Nor have Defendants otherwise shown that the interests of justice dictate a transfer of this action.

### 6. Conclusion

In sum, the Court concludes that Defendants have failed to sustain their burden to demonstrate that a transfer of this case to the District of Colombia is warranted. Defendants have not made a sufficient showing to warrant upsetting Plaintiffs' choice of forum. Accordingly, Defendants' motion to transfer is DENIED.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to transfer is DENIED.

2. This Order terminates Docket 15.

IT IS SO ORDERED.

Dated: 9/17/2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge