UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, PACIFIC ENVIRONMENT, and TURTLE ISLAND RESTORATION NETWORK,<br><br>Plaintiffs,<br><br>vs.<br><br>EXPORT-IMPORT BANK OF THE UNITED STATES and FRED P. HOCHBERG, in his official capacity as Chairman and President of the Export-Import Bank of the United States,<br><br>Defendants. | Case No: C 12-6325 SBA<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Docket 41 |

Plaintiffs Center for Biological Diversity, Pacific Environment, and Turtle Island Restoration Network (collectively, "Plaintiffs") bring the instant environmental action against the Export-Import Bank of the United States ("Ex-Im Bank") and Fred P. Hochberg ("Hochberg"), in his official capacity as Chairman and President of Ex-Im Bank (collectively, "Defendants"). Plaintiffs allege that Ex-Im Bank provided financing for two natural gas projects in Australia without complying with environmental laws in violation of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470, et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. The parties are presently before the Court on Defendants' motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. Dkt. 41. Plaintiffs oppose the motion. Dkt. 43. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendants' motion, for the reasons stated below. The Court, in its discretion, finds this

matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND[1]

In this case, environmental organizations dedicated to protecting wildlife and other environmental causes, challenge Ex-Im Bank's[2] decision to provide nearly $4.8 billion in financing for the development and construction of two liquefied natural gas ("LNG") projects in Australia's Great Barrier Reef World Heritage Area. FAC ¶ 1, Dkt. 28. Plaintiffs allege that the projects, the Australia Pacific LNG Project and the Queensland Curtis LNG Project (collectively, "the Projects"), include gas drilling, pipeline construction, construction of an LNG production facility and shipping terminal, and transport of LNG through the Great Barrier Reef. Id. According to Plaintiffs, Ex-Im Bank funded these "massive" fossil fuel projects without properly consulting and considering the Projects' substantial impacts on threatened and endangered species on the Great Barrier Reef World Heritage Area, as required by the ESA and the NHPA. Id.

The Australia Pacific LNG Project is located in Queensland, Australia. FAC ¶ 2. The project's proponents will drill up to 10,000 coal-seam gas wells in interior Queensland, install nearly 300 miles of pipeline to transport the gas to the coast, construct and operate a massive LNG facility to condense the gas to liquid and prepare it for transport, dredge the adjacent harbor, and then ship directly through the Great Barrier Reef to export the LNG around the world. Id. The Queensland Curtis LNG Project will also be located in Queensland. Id. ¶ 3. The project's proponents will drill up to 6,000 coal-seam gas wells in interior Queensland, install over 210 miles of pipeline, construct and operate a LNG facility that will be located immediately south of the Australia Pacific LNG facility, dredge the adjacent harbor, and then ship the LNG through the Great Barrier Reef. Id.

---

[1] The parties are familiar with the facts alleged in the operative complaint. As such, the Court will only recite those facts necessary for the resolution of the instant motion.

[2] Ex-Im Bank is a federal agency headquartered in Washington D.C. It is the official export credit agency of the United States. 12 U.S.C. § 635(a)(1).

Both LNG processing facilities and terminals will be located on Curtis Island, "partially" within the boundaries of the Great Barrier Reef World Heritage Area. FAC ¶ 4. Both LNG facilities will also be located within designated habitat for the dugong, a species listed under the ESA as "endangered," and within habitat for threatened-listed green sea turtles, endangered loggerhead sea turtles, and threatened saltwater crocodiles. Id.

Plaintiffs allege that, despite the serious impacts that the Projects will have on ESA-listed species and water quality, Ex-Im Bank failed to initiate or complete consultation with the United States wildlife agencies as required by the ESA before funding the Projects, and failed to "take into account the effect of the undertaking[s] . . . for purposes of avoiding or mitigating any adverse effects" to the Great Barrier Reef World Heritage Area, as required by NHPA.[3] FAC ¶¶ 5-7. According to Plaintiffs, the NHPA required Ex-Im Bank to generate and consider information regarding the Projects' impacts on the World Heritage Area, determine whether the effects will be adverse, develop modifications to avoid or mitigate those impacts, and consult with Australia and other interested entities. Id. ¶ 7.

The operative complaint alleges three claims for relief: (1) violation of § 7 of the ESA; (2) violation of the NHPA and the Administrative Procedure Act ("APA"); and (3) violation of the Freedom of Information Act and the APA. Dkt. 28. Defendants now move to dismiss Plaintiffs' first claim for relief for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Dkt. 41.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

---

[3] NHPA implements the World Heritage Convention. FAC ¶ 6. The United States is a party to the World Heritage Convention, under which the Great Barrier Reef World Heritage Area is designated. Id.

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). In a "facial" attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1038 (9th Cir. 2004). The court assumes the truth of plaintiff's factual allegations and draws all reasonable inferences in its favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. Safe Air, 373 F.3d at 1038. When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Id. at 1039.

**B. Rule 12(b)(6)**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 563 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In assessing the sufficiency of the pleadings, the court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." Iqbal, 563 U.S. at 678. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 679. Those facts must be sufficient to push the claims "across the line from conceivable to plausible." Id. at 683. Ultimately, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Endangered Species Act

The ESA was enacted in 1973 to prevent the extinction of various fish, wildlife, and plant species. The Supreme Court has called the ESA the "most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Auth. v. Hill, 437 U.S. 153, 180 (1978). The responsibility for the administration and enforcement of the ESA lies with the Secretaries of Commerce and Interior, who have delegated the responsibility to the National Marine Fisheries Service ("NMFS") with respect to marine species, and to the United States Fish and Wildlife Service ("FWS") with respect to terrestrial species. 50 C.F.R. § 402.01.

Section 7(a)(2) of the ESA requires a federal agency to "insure that any action authorized, funded, or carried out" by the agency "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). Section 7(a)(2) of the ESA imposes a procedural duty on federal agencies to consult with the FWS or NMFS for any "agency action" that "may affect" a listed species or its critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a). The purpose of the consultation procedure is to allow either the FWS or NMFS to determine whether the federal action is likely to jeopardize the survival of a protected species or adversely modify its critical habitat, and if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts. See 16 U.S.C. § 1536(b)(3)(A); Karuk Tribe of Cal. v. U.S. Forest Serv., 681 F.3d 1006, 1020 (9th Cir. 2012) (en banc). "The consultation requirement reflects a conscious

decision by Congress to give endangered species priority over the primary missions' of federal agencies." Karuk Tribe, 681 F.3d at 1020 (quotation marks omitted).

### B. Motion to Dismiss

In support of their ESA claim, Plaintiffs allege that Ex-Im Bank's decision to provide funding for the Projects constitutes "agency action" within the meaning of the ESA that may affect ESA-listed species. FAC ¶¶ 114-115. According to Plaintiffs, Ex-Im Bank violated § 7(a)(2) of the ESA by failing to consult with the FWS and/or NMFS (collectively, "the Services") regarding the impacts of its actions on ESA-listed species. Id. ¶¶ 116-119. Plaintiffs assert that, by failing to comply with § 7(a)(2), Ex-Im Bank failed to ensure its actions do not jeopardize any listed species, including dugong, loggerhead and green sea turtles, saltwater crocodiles, and humpback and sperm whales. Id. ¶ 118.

In the instant motion, Defendants move to dismiss Plaintiffs' ESA claim on the ground that Ex-Im Bank was not required to consult with the Services under § 7(a)(2) because the Projects do not constitute agency actions. According to Defendants, the consultation obligations under § 7(a)(2) do not apply because the Projects are located in a foreign country. In addition, Defendants argue that, to the extent Plaintiffs bring a facial challenge to the validity of the Services' regulation limiting the geographical scope of the ESA, dismissal is appropriate because Plaintiffs cannot challenge the validity of the regulation without suing the Services, and because any challenge to the regulation is barred by the six-year statute of limitations in 28 U.S.C. § 2401(a).[4]

### 1. Applicability of § 7(a)(2) of the ESA

The threshold question raised by Defendants' motion is whether the consultation obligations under § 7(a)(2) of the ESA apply to the Projects. Defendants contend that Ex-

---

[4] Defendants contend that § 2401(a) is jurisdictional, and therefore any challenge to the Services' regulation occurring more than six years before the amended complaint was filed must be dismissed for lack of subject matter jurisdiction. In the alternative, Defendants argue that, even if § 2401(a) is not jurisdictional, dismissal is appropriate for failure to state a claim upon which relief can be granted. Given Defendants' arguments, the Court need not determine whether § 2401(a) is jurisdictional. Dismissal is appropriate if Plaintiffs' challenge to the Services' regulation is time-barred.

Im Bank was not required to consult with the Services prior to providing funding for the Projects because a federal agency funding a project in a foreign country does not have a duty to consult with the Services about the project's impact on endangered species.

Under § 7(a)(2) of the ESA, a federal agency that authorizes, funds, or carries out any action must consult with the Secretary[5] to insure that the action is "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species. . . ." 16 U.S.C. § 1536(a)(2). In 1978, the Services promulgated a joint regulation stating that the obligations imposed by § 7(a)(2) extend to actions taken in foreign nations. See 43 Fed. Reg. 870,874 (1978). However, in 1986, the Services promulgated a revised joint regulation, reinterpreting § 7(a)(2) to require consultation only for actions taken in the United States or upon the high seas. See 51 Fed. Reg. 19,926, 19,929-19,930 (1986) (stating that the scope of § 7(a)(2) is limited to the United States, its territorial sea, and the outer continental shelf, "because of the apparent domestic orientation of the consultation and exemption processes resulting from the Amendments, and because of the potential for interference with the sovereignty of foreign nations"); 50 C.F.R. 402.01; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 557-559 (1992) (the revised joint regulation limits the § 7(a)(2)'s geographic scope to the United States and the high seas); Defenders of Wildlife, Friends of Animals and Their Environment v. Hodel, 851 F.2d 1035, 1037 (8th Cir. 1988) (the revised joint regulation "limits the scope of consultation" to agency action "in the United States or upon the high seas"; noting that, "[p]reviously, consultation on federal agency actions in foreign countries was required"). The Services' revised joint regulation (hereafter "the Services' regulation" or "regulation") defines an "action" as "all activities or programs of any kind authorized, funded, or carried out, in whole or in part by Federal agencies in the United States or upon the high seas." 50 C.F.R. § 402.02. Examples of actions given in the

---

[5] The ESA defines "Secretary" to mean "the Secretary of the Interior or the Secretary of Commerce as program responsibilities are vested pursuant to the provisions of Reorganization Plan Numbered 4 of 1970." 16 U.S.C. § 1532(15).

regulation include "the granting of licenses, contracts, leases, easements, rights-of-way, permits or grants-in-aid." 50 C.F.R. § 402.02(c).

In response to the instant motion, Plaintiffs contend that dismissal of their ESA claim is inappropriate because, even assuming that the Services' regulation is valid, the Projects include "activities . . . upon the high seas," thereby triggering § 7(a)(2)'s consultation requirements. The Court disagrees. The allegations in the FAC do not support such a conclusion. The FAC simply alleges that the Projects will require "dredging of Gladstone Harbour to facilitate tanker access," and that, once the Projects are operational, "tankers will transport LNG . . . to destinations worldwide." FAC ¶¶ 82, 92. The FAC does not allege facts plausibly suggesting that the transportation of LNG is part of the Projects funded by Ex-Im Bank. To the contrary, the allegations in the FAC demonstrate that transportation of LNG will occur after the Projects are completed. Furthermore, Defendants have submitted environmental review documents that do not identify transportation of LNG as a component of either project.[6]

Plaintiffs have not cited any authority demonstrating that the Projects funded by Ex-Im Bank (as described in the FAC) constitute "activities . . . upon the high seas." Buried in a footnote, Plaintiffs argue that, even though the Projects are located outside of the United States, Ex-Im Bank was nonetheless required to consult with the Services prior to providing funding for the Projects because the Services' regulation requires Ex-Im Bank to ensure that any action it funds in the United States complies with § 7(a)(2) of the ESA. In support

---

[6] In connection with its reply brief, Defendants filed a request for judicial notice. Defendants request the Court take judicial notice of: (1) Executive Summary to the Environmental Impact Statement for the Australia Pacific LNG; and (2) Executive Summary to the Environmental Impact Statement for the Queensland Curtis LNG. Dkt. 45. Defendants contend that judicial notice is appropriate because these documents are matters of public record posted on a government website. See Flax Decl. ¶ 4. Plaintiffs do not oppose Defendants' request for judicial notice. A court may take judicial notice of undisputed matters of public record. Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012). A court may also take judicial notice of "information posted on government websites." Sears v. Cnty. of Monterey, 2013 WL 4510672, at *4 (N.D. Cal. 2013). Accordingly, Defendants' request for judicial notice is GRANTED.

of their position, Plaintiffs rely on the plain language of the Services' regulation and Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528 (D.C. Cir. 1993).

As an initial matter, the Court notes that it is wholly improper to make substantive arguments in a footnote. First Advantage Background Services Corp. v. Private Eyes, Inc., 569 F.Supp.2d 929, 935 n. 1 (N.D. Cal. 2008) ("A footnote is the wrong place for substantive arguments on the merits of a motion. . . ."). That aside, the Court is not persuaded by Plaintiffs' undeveloped and conclusory argument. Plaintiffs urge the Court to adopt a reading of the Services' regulation that would require consultation for agency actions taken in a foreign country simply because that action was funded in the United States. Plaintiffs have not cited any authority supporting such a novel construction of the regulation. Moreover, Plaintiffs' proposed construction contravenes the Services' express purpose in revising the regulation in 1986, which was to limit the geographic scope of § 7(a)(2) to agency actions taken in the United States or upon the high seas. See 51 Fed. Reg. 19,926, 19,929-19,930; Lujan, 504 U.S. at 558-559. Plaintiffs' proposed construction is also contrary to decisional authority interpreting the regulation as only requiring consultation under § 7(a)(2) for "actions taken in the United States or on the high seas." See Lujan, 504 U.S. at 558-559; see also Hodel, 851 F.2d at 1037. Accordingly, contrary to Plaintiffs' contention, the Court finds that Ex-Im Bank was not required to consult with the Services prior to providing funding for the Projects based on the plain language of the regulation.

Further, the Court finds that Plaintiffs' reliance on Massey is misplaced. Massey, a case involving the extraterritorial application of the National Environmental Policy Act ("NEPA"), is readily distinguishable from the instant action. In Massey, an environmental group brought suit under NEPA to enjoin a federal agency from permitting the incineration of food waste in Antarctica. Massey, 986 F.2d at 529. The D.C. Circuit held that "the presumption against the extraterritorial application of statutes [e.g., NEPA] . . . does not apply where the conduct regulated by the statute occurs primarily, if not exclusively, in the United States, and the alleged extraterritorial effect of the statute will be felt in

Antarctica—a continent without a sovereign, and an area over which the United States has a great measure of legislative control." Id. Plaintiffs have failed to provide any analysis of Massey, let alone persuasive analysis demonstrating that Massey supports the proposition that the ESA's consultation requirements apply to projects located in foreign countries. Indeed, Massey is inapposite as it involved the application of NEPA (not the ESA) to a United States research station in Antarctica, which the D.C. Circuit noted "is not a foreign country, but rather a continent that is most frequently analogized to outer space." Id. at 533. Significantly, the D.C. Circuit expressly limited its holding to NEPA's application in Antarctica. Id. at 537 ("We find it important to note . . . that we do not decide today how NEPA might apply to actions in a case involving an actual foreign sovereign or how other U.S. statutes might apply to Antarctica.").

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' ESA claim is GRANTED. Because it is unclear whether Plaintiffs can allege additional facts to state a cognizable ESA claim, Plaintiffs' ESA claim is dismissed with leave to amend.

### 2. Validity of the Services' Regulation

Defendants move to dismiss the FAC to the extent that Plaintiffs seek to allege a claim challenging the validity of the Services' regulation.[7] Defendants contend that such a claim is subject to dismissal because it is a time-barred facial challenge to the regulation, and because Plaintiffs have failed to name the Services as defendants. In response, Plaintiffs contend that Defendants "wrongly" argue that they assert a facial challenge to the regulation. According to Plaintiffs, they "challenge the Services' regulation 'as-applied' by Ex-Im [Bank] because the regulation unlawfully exempts actions in foreign countries, in violation of the ESA, and Defendants' reliance on the invalid regulation is impermissible."

---

[7] While the FAC does not allege a stand-alone claim challenging the validity of the Services' regulation, it asserts that the regulation is unlawful. FAC ¶ 43. Liberally construed, the FAC arguably attempts to state a claim challenging the validity of the Services' regulation. In response to the instant motion, Plaintiffs assert that they seek to challenge the validity of the regulation. In light of the foregoing, the Court will address Defendants' contention that Plaintiffs cannot state an actionable claim challenging the Services' regulation.

Plaintiffs further argue that the Services do not need to be parties to this action in order for them to challenge the Services' regulation.[8]

A facial challenge to the validity of an agency's regulation on the ground that the agency exceeded constitutional or statutory authority in promulgating the regulation must be brought within six years after publication of the regulation in the Federal Register. See Oksner v. Blakey, 2007 WL 3238659, at *6 (N.D. Cal. 2007) (Armstrong, J.) (citing Wind River Mining Corp. v. United States, 946 F.2d 710, 715 (9th Cir. 1991)). Facial challenges to agency actions must be raised within six years of promulgation because "[t]he grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision. . . . The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure." Wind River, 946 F.2d at 715. After the six-year limitations period has expired, a challenge to the validity of an agency's regulation can only be attacked in two ways: (1) through an "as-applied" challenge requesting judicial review of the agency's adverse application of the regulation to the particular challenger, or (2) by petitioning the agency for amendment or rescission of the regulation and then appealing the agency's decision.[9] See Oksner, 2007 WL 3238659, at *6 (citing Wind River, 946 F.2d at 715).

Here, it is undisputed that the Services' regulation was published in the Federal Register in 1986. Thus, any facial challenge to the validity of the regulation is barred by the six-year limitations period. Further, while Plaintiffs contend that they are bringing an "as-applied" challenge to the regulation, it is undisputed that neither the FWS nor NMFS has applied the regulation to them. Rather, Ex-Im Bank has invoked the regulation as a

---

[8] As set forth below, because the Court finds that Plaintiffs' challenge to the Services' regulation is time-barred, the Court will not address Defendants' argument that dismissal of Plaintiffs' ESA claim is appropriate because the Services have not been named as defendants in this action.

[9] The FAC does not allege that Plaintiffs have petitioned the Services to amend or rescind the revised joint regulation.

basis for insulating them from the requirement to consult with the Services before providing funding for the Projects.

The Court finds that Plaintiffs' challenge to the Services' regulation is a time-barred policy-based facial challenge, not an "as-applied" challenge. Plaintiffs are directly challenging the validity of the Services' regulation itself. They contend that the regulation violates the ESA because it "unlawfully exempts [agency] actions in foreign countries" from § 7(a)(2)'s consultation requirements. According to Plaintiffs, the Services lacked authority to issue a regulation limiting the geographic scope of agency actions subject to § 7(a)(2)'s consultation requirements. Thus, Plaintiffs assert that the regulation is invalid as written, rather than invalid "as-applied" to them. The grounds for Plaintiffs' policy-based challenge to the Services' regulation arose at the time the regulation was promulgated and should have been apparent to any interested citizen within the six-year period following publication of the regulation in the Federal Register. Indeed, a group of environmental organizations challenged the validity of the Services' regulation shortly after it was promulgated. See Lujan, 504 U.S. at 557-559, 578 (holding that plaintiffs lacked standing to challenge the Services' regulation; reversing the Eighth Circuit's determination that the Services' regulation was invalid for providing that federal agencies' funding projects in foreign countries have no duties to consult with the Secretary about the projects impact on endangered species).

Plaintiffs have not cited any authority or provided persuasive legal analysis demonstrating that their challenge to the Services' regulation is an as-applied challenge within the meaning of Wind River. See Wind River, 946 F.2d at 716 (holding that "a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger"). Ex-Im Bank did not promulgate the challenged regulation or take any action against Plaintiffs "in particular." Plaintiffs have not proffered any authority supporting the proposition that Ex-Im Bank's mere invocation of the Services' regulation as a basis for its decision not to consult with the Services renders their challenge to the regulation a timely

as-applied challenge. In other words, Plaintiffs have not shown that their challenge falls within the narrow exception to the six-year statute of limitations articulated in Wind River. See id. at 716 (describing the case as permitting a "narrow scope of challenges to agency decisions"). Accordingly, to the extent that the FAC attempts to allege a claim challenging the validity of the Services' regulation, dismissal of this claim is warranted. Plaintiffs' challenge to the regulation is a time-barred facial challenge to the legal validity of the regulation. See Environmental Protection Information Center v. Pacific Lumber Co., 266 F.Supp.2d 1101, 1121 (N.D. Cal. 2003) (direct challenge to legal validity of regulation is a facial challenge); see also Oksner, 2007 WL 3238659, at *6. Therefore, Defendants' motion to dismiss this claim is GRANTED. However, because it is unclear at this juncture whether Plaintiffs can allege additional facts to state an actionable claim challenging the Services' regulation, this claim is dismissed with leave to amend.

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss is GRANTED with leave to amend. Plaintiffs may file an amended complaint within twenty-one (21) days from the date this order is filed. Plaintiffs shall not add any new claims absent prior leave of Court. The Court warns Plaintiffs that the failure to timely file an amended complaint will result in the dismissal of their ESA claim and their claim challenging the validity of the Services' regulation.

2. This Order terminates Docket 41.

IT IS SO ORDERED.

Dated: 8/12/2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge