SAM HIRSCH, Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

MEREDITH L. FLAX, Senior Trial Attorney (D.C. Bar No. 468016)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0404
Facsimile: (202) 305-0275
meredith.flax@usdoj.gov

KRISTOFOR SWANSON, Trial Attorney (CO Bar No. 39378)
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:  (202) 305-0248
Facsimile:  (202) 305-0506
kristofor.swanson@usdoj.gov

*Attorneys for Defendants*
*[Additional counsel listed under signature block]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Oakland Division

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | ) ) ) | 4:12-cv-06325-SBA |
| Plaintiffs, | ) ) | REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST CLAIM FOR RELIEF IN THE SECOND AMENDED COMPLAINT |
| v. | ) ) ) | |
| EXPORT-IMPORT BANK OF THE UNITED STATES, *et al.*, | ) ) ) | Date:   November 25, 2014 Time:  1:00 p.m. Place:  4th Floor, Courtroom 1 |
| Defendants. | ) ) | Judge:  Hon. Saundra Brown Armstrong |

1    This motion requires the Court to answer a straightforward question: do the allegations

2    in Plaintiffs' Second Amended Complaint ("SAC") contain sufficient factual content so that the

3    Court can draw a reasonable inference that Defendants Export-Import Bank of the United States,

4    et al. (collectively the "Bank") violated Endangered Species Act ("ESA") Section 7(a)(2) by

5    failing to consult with the U.S. Fish and Wildlife Service and/or the National Marine Fisheries

6    Service before approving loans for two liquefied natural gas ("LNG") projects in Australia? The

7    answer is no. Under the ESA, consultation is triggered only when a Federal agency takes an

8    "action" in the United States or upon the high seas. The conclusory allegations in the SAC that

9    the Australia Pacific LNG ("APLNG") Project and Queensland Curtis LNG ("QCLNG") Project

10   (collectively the "Projects") include shipping upon the high seas are not factual allegations and

11   thus are insufficient to allow the Court to conclude that the Bank had a duty to consult. The SAC

12   does contain four paragraphs with factual allegations consisting of quoted language from certain

13   Project-proponent and Bank documents. However, these factual allegations are insufficient on

14   their face to allow the Court to draw a reasonable inference that the Bank had a duty to consult.

15   Moreover, the allegations are insufficient even if the Court considers the documents incorporated

16   by reference into the SAC, which it can and should do. As the Bank has demonstrated, and

17   Plaintiffs have failed to rebut, these documents show that the Projects occur wholly within a

18   foreign country and its territorial waters; no part of the Projects occurs on the high seas.

19   Furthermore, Plaintiffs have not alleged and cannot allege that the Bank funded any shipping on

20   the high seas or otherwise. Because the allegations in the SAC are deficient, and Plaintiffs have

21   already been provided an opportunity to amend their complaint, the Court should dismiss the

22   First Claim for Relief with prejudice for failure to state a claim.

## ARGUMENT

### I.    The SAC Alone is Insufficient to Survive a Motion to Dismiss.

25   After the Court dismissed their First Amended Complaint because it did "not allege facts

26   plausibly suggesting that the transportation of LNG is part of the Projects funded by Ex-Im

27   Bank", Plaintiffs amended their complaint in two ways, but neither provides facts that suggest

28   the Bank had a duty to consult before approving the loans for the Projects. Order Granting

1   Motion to Dismiss (ECF No. 62) ("Order") at 8. First, Plaintiffs added conclusory statements

2   that the Projects "include[] shipping of the final LNG product … across the high seas to ports

3   abroad …" and "occur[] partially upon the high seas." *See*, *e.g.*, SAC (ECF No. 64) ¶¶ 84, 91,

4   97, 105. The Supreme Court has repeatedly rejected such "naked assertions" and "mere

5   conclusory statements" as insufficient to state a claim upon which relief can be granted. *Ashcroft*

6   *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557

7   (2007)). This Court should similarly find that Plaintiffs' conclusory allegations, devoid of facts,

8   are insufficient to state a claim here.

9        Plaintiffs also added allegations consisting of selective quotes from the Project

10   proponents' environmental impact statements ("EIS"), the Bank's Board Memoranda, and a

11   memorandum prepared by the Project proponents for the APLNG Project. SAC ¶¶ 85-86, 98-99.

12   While these may be factual allegations, even if the Court were to accept these snippets of the

13   cited documents as true, these allegations do not plausibly suggest that transportation of LNG on

14   the high seas is part of the Projects. The allegations in paragraphs 85 and 98, like the allegations

15   the Court has already rejected, "demonstrate that transportation of LNG will occur after the

16   Projects are completed," Order at 8 (emphasis added), not that transportation of LNG is part of

17   the Projects. The allegations in paragraphs 86 and 99 include quotes demonstrating that one of

18   each Project's proponents will also be a shipper of LNG. Even if the Court accepts these

19   allegations as true, the allegations do not plausibly lead to the conclusion that shipping of LNG is

20   part of the Projects. Defs' MTD (ECF No. 69) at 10.

21        Plaintiffs argue that the Bank "do[es] not claim Plaintiffs' complaint *on its face* is

22   insufficient – nor could they, given the clear allegations and substantial detail provided showing

23   the actions occur on the high seas." Plfs' Opp. (ECF No. 71) at 5 (emphasis in original) (citing

24   SAC ¶¶ 4, 84-86, 97-99). Plaintiffs' argument is disingenuous given that the only new factual

25   allegations in Plaintiffs' SAC are quotes to extrinsic documents that do not on their face

26   demonstrate that shipping is part of the Projects. Thus, the Bank does claim that the SAC is

27   insufficient on its face. But, because the new factual allegations quote extrinsic documents, the

28   Bank could only assume that the Court would have to review the documents to determine

1  whether Plaintiffs' allegations plausibly lead to the conclusion that there is a high seas

2  component to the Projects.

3        In sum, Plaintiffs' new factual allegations fail to state a claim on their face because they

4  do not provide facts that would lead the Court to conclude that shipping on the high seas is part

5  of the Projects. To the contrary, these allegations show only that shipping will occur after the

6  Projects are operational or that some of the Project proponents will also ship LNG, neither of

7  which is sufficient to state a claim that the Bank's "action" under the ESA occurred on the high

8  seas.

9  **II.    The Court Can and Should Consider the Documents Plaintiffs Quote in the SAC.**

10        While the Court could dismiss the SAC because it is deficient on its face, it is appropriate

11  for the Court to consider the "documents incorporated by reference in the complaint." *United*

12  *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Plaintiffs incorporated a number of

13  documents by reference in the SAC by quoting portions of those documents. *See*, *e.g.*, SAC ¶¶

14  85-86, 98-99. Consideration of these documents will allow the Court to put Plaintiffs' selective

15  quotations into context and confirm that the documents do not actually provide facts that would

16  support an inference that shipping on the high seas is part of the Projects.

17        Plaintiffs concede that the Court has the discretion to consider these documents, but urge

18  the Court not to do so and instead to defer review to the summary judgment stage based on the

19  "whole" administrative record. Plfs' Opp. at 6. Plaintiffs fail to explain why the "whole"

20  administrative record is necessary here, particularly in light of the fact that they are not making a

21  substantive attack on the adequacy of the Bank's decisionmaking under the ESA.[1] Plaintiffs had

22  the administrative record before they filed their SAC. *See* Plfs' Opp. at 7 (noting that the

23

24

25  _____

26  [1] Moreover, even where a plaintiff is attacking the adequacy of agency decisionmaking, the Court does not have to review the "whole" administrative record. *See* 5 U.S.C. § 706 ("the court shall

27  review the whole record or those parts of it cited by a party"); *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 676-77 (9th Cir. 1993) (affirming district court's grant of motion

28  to dismiss and rejecting argument that it was improper to dismiss an Administrative Procedure Act claim without reviewing the "whole record").

REPLY IN SSUPPORT OF FDS' MOTION
TO DISMISS FIRST CLAIM IN SAC                    3                    12-cv-06325-SBA

1    administrative record was filed with the Court in May 2014). The fact that they could have cited

2    to or quoted other record documents, but did not, is therefore telling.

3            Because the Court can resolve this motion without resort to the "whole" administrative

4    record and Plaintiffs have not challenged the adequacy of agency decisionmaking, the cases upon

5    which Plaintiffs rely are inapposite. For example, in *District Hospital Partners, L.P. v. Sebelius*,

6    the defendants moved to dismiss under Rule 12(b)(6), arguing that a Federal Register notice

7    advanced reasonable explanations for the agency's cost methodology and thus the plaintiffs'

8    claims that the methodology was arbitrary and capricious failed as matter of law. 794 F. Supp. 2d

9    162, 170 (D.D.C. 2011). The court determined that, while it could refer to the Federal Register

10   without converting the motion to dismiss to a motion for summary judgment, "it conclude[d] that

11   dismissal based solely on [the] contents [of the Federal Register] would be premature because a

12   review of the administrative record is necessary to a determination of whether the Secretary's

13   methodology was arbitrary and capricious." *Id.* at 171. Here, the Bank is asking the Court to

14   consider documents that Plaintiffs (not the Bank) have put forward to confirm or deny whether

15   they actually support an inference that shipping on the high seas is part of the Projects, not to

16   provide an explanation for a substantive decision.[2]

17           For all these reasons, it is appropriate for the Court to consider the documents cited in the

18   SAC and resolve this issue now. Nothing would be gained by waiting for summary judgment.

19

20

21   ───────────────────────

22   [2] Similarly in *Friends of the River v. U.S. Army Corps of Engineers*, the court denied the
     government's 12(b)(1) motion to dismiss a challenge to an agency policy guidance letter and

23   white paper because the court determined that the question of jurisdiction was so dependent on
     the resolution of factual issues going to the merits that it could not "merely look to the face of the

24   documents" to resolve the motion to dismiss. 870 F. Supp. 2d 966, 974 (E.D. Cal. 2012). *Friends
     of the River* is inapposite because this Court does not need the entire administrative record to

25   resolve the current motion to dismiss, which focuses solely on whether the allegations in
     Plaintiffs' SAC actually state a claim. Plaintiffs also cite to *Pinnacle Armor, Inc. v. United

26   States*, 648 F.3d 708, 721 (9th Cir. 2011). Plfs' Opp. at 7. However, that case merely stands for
     the unremarkable proposition that, where the factual allegations in a complaint are sufficient to

27   survive a Rule 12(b)(6) motion to dismiss, the court should not rule on the merits of the

28   plaintiff's claims.

**III.    The Two Other Documents Cited by the Bank are Judicially Noticeable.**

In addition to the documents Plaintiffs quote in the SAC, the Bank also cited to the Queensland Government's Terms of Reference to provide further support for the discussion of shipping in the Project proponents' EISs. Defs' MTD at 7-8 (citing Exhibits 4 and 5). As the Bank has explained, the EISs looked broadly at potential environmental impacts, including indirect shipping impacts that may result from the construction and operation of the two export facilities. *Id.* at 6 n.6. Although the Project proponents' consideration of such impacts does not alter the scope of the Bank's "action" under the ESA, the Terms of Reference documents further undermine any reliance on the EISs to support the allegation that shipping on the high seas is part of the Projects because the documents show that any discussion of indirect impacts of shipping in the EISs was limited to such impacts at the LNG terminal and in Gladstone Harbor. In other words, to the extent the EISs looked at shipping, that review was limited in geographic scope to shipping activities within Australia's territorial waters, and did not look at shipping activities on the high seas. *Id.* The Terms of Reference are publicly available documents. *See* http://www.dsdip.qld.gov.au/assessments-and-approvals/queensland-curtis-liquefied-natural-gas-project.html; http://www.aplng.com.au/environment/terms-reference (last visited Nov. 13, 2014). Consequently, the Court can take judicial notice of these documents. Order at 8 n. 6 (citing *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) and *Sears v. County of Monterey*, No. 11-cv-1876-LHK, 2013 WL 4510672, at *4 (N.D. Cal. Aug. 22, 2013)).

**IV.    The Documents Show that the Projects Do Not Include Shipping on the High Seas.**

The Bank has already shown that the documents upon which Plaintiffs rely do not support an inference that shipping on the high seas is a part of either Project. Plaintiffs' selective quotes to the Project EISs pertain to the Project proponents' evaluation of the potential environmental impacts of shipping within Australian waters, not on the high seas, and during the operational phase of the Project, not as a part of Project construction, which the Bank is actually funding. Defs' MTD at 7-9. This reading is confirmed by reference to other portions of the EISs, as well as to the Terms of Reference documents. *Id.*

1    Plaintiffs argue that "Defendants implore the Court to look only at the 'Executive

2    Summary' excerpts from the Projects' EISs" and that the actual EIS documents describe the

3    Projects "to include shipping through the high seas." Plfs' Opp. at 11-12. However, the parts of

4    the "actual" EIS documents that Plaintiffs cite do not support Plaintiffs' argument either. Instead,

5    like the summaries, they show that shipping of LNG will occur as part of the operational phase

6    of the Projects, which the Court has already found insufficient.

7    Plaintiffs also argue that "Defendants claim the Projects' 'Terms of Reference'

8    documents dictate the Projects' scope." Plfs' Opp. at 12. Plaintiffs mischaracterize the Bank's

9    use of these documents. As the Bank explained, the Terms of Reference documents simply

10   provide further support for the point that any evaluation of the potential environmental impact of

11   shipping in the EISs was limited in scope to such activities within the harbor and Australian

12   waters, as opposed to shipping on the high seas. Defs' MTD at 7.

13   Notably, Plaintiffs provide no rebuttal with respect to the other portions of the documents

14   the Bank provided as exhibits to its opening motion. These documents show that shipping on the

15   high seas is not a part of either Project and that the Project proponents did not even consider the

16   potential impacts of shipping on the high seas in the EISs. Thus, Plaintiffs have effectively

17   conceded that if the Court considers these documents, the Court cannot reasonably infer from the

18   allegations in the SAC that shipping on the high seas is part of the Projects.

19   **V.    Plaintiffs Have Not Alleged and Cannot Allege that the Bank Funded Any Shipping**
20   **and Plaintiffs Misconstrue the Meaning of the Definition of Agency "Action."**

21   Finally, even if the Court were to find the Plaintiffs have provided sufficient factual

22   allegations that shipping on the high seas is part of the Projects, the SAC would still fail to state a

23   claim because Plaintiffs have not alleged and cannot allege that the Bank provided any funding

24   for shipping. Defs' MTD at 9-10. The ESA regulations define "action" as "all activities or

25   programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies

26   in the United States or upon the high seas." 50 C.F.R. § 402.02. Here, the Bank provided partial

27   funding in the form of loans to the Project proponents to construct LNG facilities located in

28   Australia. Defs' MTD at 9 (quoting the Board Memoranda for each Project). Plaintiffs'

1   allegations pertaining to the Bank's funding of the two Projects remain unchanged from the First

2   to the Second Amended Complaints. Compare FAC (ECF No. 28) at ¶¶ 100-108 with SAC ¶¶

3   109-117. There is no evidence and neither complaint contains an allegation that the Bank

4   provided any funding for shipping on the high seas or otherwise.

5       Plaintiffs contend that the Bank's argument "contravenes its previous position in this

6   case," which Plaintiffs characterize as relying "on the Projects' EISs as the definitive

7   'demonstrat[ion]' of what the 'action[s]' include." Plfs' Opp. at 12 n.9. Contrary to Plaintiffs'

8   argument, the Bank never claimed that the EISs alone define the Bank's "action." Indeed, it

9   would not make sense for the Bank to do so considering that the EISs were prepared by the

10  Project proponents, not the Bank. Moreover, Plaintiffs did not object to the Bank's use of the

11  EISs or argue one way or the other about the definition of the Bank's "action" in their opposition

12  to the Bank's previous motion to dismiss. Order at 8 n.6 ("Plaintiffs do not oppose Defendants'

13  request for judicial notice" of the EISs' Executive Summaries). Plaintiffs also provide no support

14  for the idea that the Bank is limited to making the same arguments in this motion to dismiss that

15  it made in its first motion to dismiss, particularly given that the Bank is moving to dismiss an

16  amended complaint.

17      In any event, Plaintiffs misconstrue the definition of agency "action," conflating the term

18  "action" with the "effects of the action." Plfs' Opp. at 13-15. Plaintiffs point to one of four

19  examples of "action" as "actions directly or indirectly causing modifications to the land, water,

20  or air." *Id.* at 13 (quoting 50 C.F.R. § 402.02 definition of "action" subpart (d)). Plaintiffs then

21  argue that the Bank was required to consult because the "Bank's funding, at a minimum,

22  'indirectly' affects the high seas, as the Bank is funding portions of the QCLNG and APLNG

23  Projects – Projects that indisputably result in shipping upon the high seas." Plfs' Opp. at 13.

24      The examples provided in the definition of "action" do not define the term "action" for

25  purposes of determining whether the duty to consult is triggered. They are examples of what

26  types of projects may be the subject of a consultation, assuming that they involve "actions" that

27  are "authorized, funded, or carried out" in whole or in part by the agency within the United

28  States or upon the high seas. This is illustrated by the fact that example (d) uses the term "action"

1   within its description. Although example (d) refers to direct and indirect modifications to the

2   land, water, or air, the example assumes that the activity is an "action" for triggering the

3   mandatory duty to consult. Direct and indirect effects of an "action" are analyzed, but only after

4   the duty to consult has been triggered. Plaintiffs' interpretation impermissibly reads each of the

5   "examples" as activities triggering the responsibility to consult, sidestepping the threshold issue

6   of whether these activities actually meet the regulatory definition of "action," including the

7   mandatory requirement that they occur in the United States or upon the high seas.

8       Section 402.01 makes clear that the jurisdictional scope of ESA Section 7(a)(2) is

9   confined to U.S. territory and the high seas. There is no reference in this section to an evaluation

10  of a project's effects for determining whether an "action" occurs in the United States or upon the

11  high seas. Effects are simply not analyzed until the duty to consult has been triggered. In fact,

12  Plaintiffs' argument would impermissibly extend the jurisdictional reach of Section 7(a)(2)

13  through an assessment of the effects of the action rather than the action itself.

14      Contrary to Plaintiffs' contention, the "action" is defined by what activities a Federal

15  agency actually authorizes, funds, or carries out in the United States or upon the high seas, not by

16  what direct and indirect effects the activities may cause. Only if the activities themselves take

17  place in the United States or upon the high seas is consultation triggered and the effects of the

18  activities considered. Here, it is undisputed that the only activities the Bank authorized, funded,

19  or carried out involve the construction of LNG facilities located wholly within a foreign country

20  and that the Bank did not authorize, fund, or carry out any activities on the high seas.

21  Accordingly, Plaintiffs' ESA claim fails to state a claim upon which relief can be granted

22  because Plaintiffs have not alleged and cannot allege that the Bank took an "action" triggering

23  the duty to consult under the ESA.

24      The cases on which Plaintiffs rely for their argument are not to the contrary. Plfs' Opp. at

25  14. Those cases stand for the proposition that federal agencies must not "wear blinders" and

26  ignore indirect effects of agency action when "considering the environmental impact" of that

27  action. *Riverside Irrigation Dist. v. Andrews*, 758 F.2d 508, 512 (10th Cir. 1985); *see also*

28  *National Wildlife Fed'n v. Coleman*, 529 F.2d 359, 373-74 (5th Cir. 1976); *National Wildlife*

1   *Fed'n v. FEMA*, 345 F. Supp. 2d 1151 (W.D. Wash. 2004); *Florida Key Deer v. Stickney*, 864

2   F.Supp. 1222, 1228 (S.D. Fla. 1994). However, none of these cases establishes that the indirect

3   effects of agency activity that is geographically exempted from the definition of agency "action"

4   creates an obligation to consult under the ESA. Rather, in each cited case, the agency "action"

5   was undeniably occurring within the geographical reach of the Section 7 consultation

6   requirement and thus indirect effects of the agency "action" had to be considered in the

7   consultation.[3]

8                                       **<u>CONCLUSION</u>**

9          Plaintiffs' First Claim for Relief in the Second Amended Complaint fails to state a claim

10  upon which relief can be granted because it lacks sufficient factual content -- both on its face and

11  including the documents incorporated by reference – for the Court to draw a reasonable inference

12  that the Bank violated the ESA by failing to consult before providing funding for LNG Projects

13  in Australia. Moreover, Plaintiffs have not alleged and cannot allege that the Bank funded any

14  shipping on the high seas or otherwise. Because Plaintiffs have already had an opportunity to

15  amend their complaint and failed to provide sufficient allegations, the Court should now dismiss

16  the First Claim for Relief with prejudice.

17  Dated:  November 14, 2014          Respectfully submitted,

18                                     SAM HIRSCH, Acting Assistant Attorney General
                                       U.S. Department of Justice
19                                     Environment & Natural Resources Division

20

21                                       /s/ *Meredith L. Flax*

22

23

24  [3] The cases Plaintiffs cite addressing the required scope of a Biological Opinion created during

25  the consultation process also do not address the issue at hand here. Plfs' Opp. at 14-15 (citing
    *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988), *Wild Fish Conservancy v. Salazar*, 628 F.3d

26  513 (9th Cir. 2010), and *Greenpeace v. National Marine Fisheries Serv.*, 80 F.Supp 2d 1137
    (W.D. Wash. 2013)). Plaintiffs themselves acknowledge that these cases arise in a different

27  context and cite no authority establishing a relevant connection. *Id.* at 15 n.12. Furthermore, like
    the other cases they cite, the agency "action" was undeniably occurring within the United States

28  and so clearly was within the geographical scope of the consultation requirement.

MEREDITH L. FLAX, Senior Trial Attorney
D.C. Bar No. 468016
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0404
Facsimile: (202) 305-0275
meredith.flax@usdoj.gov
KRISTOFOR SWANSON, Trial Attorney
Colo. Bar No. 39378
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:  (202) 305-0248
Facsimile:  (202) 305-0506
kristofor.swanson@usdoj.gov


MELINDA HAAG
UNITED STATES ATTORNEY
MICHAEL T. PYLE
Assistant U.S. Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone: (408) 535-5087
Facsimile: (408) 535-5081
michael.t.pyle@usdoj.gov

***Attorneys for Defendants***